Roy E. Gregg and Lorene W. Gregg v. Commissioner.
Gregg v. Commissioner
Docket No. 38157.
United States Tax Court
1953 Tax Ct. Memo LEXIS 271; 12 T.C.M. (CCH) 478; T.C.M. (RIA) 53152; April 30, 1953
*271 James L. Quinn, Esq., for the petitioners. Thomas C. Thompson, Jr., Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The respondent has determined deficiencies in petitioners' income tax as follows: Year
Deficiency
1948
$387.58
1949
477.18
The primary issue is whether Roy E. Gregg is an employee or independent contractor in the operation of his business, and whether petitioners are entitled to certain deductions for the years 1948 and 1949. Findings of Fact Roy E. Gregg, hereinafter referred to as petitioner or Manager, and his wife, Lorene W. Gregg, were residents of Topeka, Kansas. Petitioner's returns for the years 1948 and 1949 were filed with the collector of internal revenue for the district of Kansas. Petitioner entered into a "District Manager Contract" with the Sonotone Corporation and this agreement was in force during the years 1948 and 1949. The contract was for one year but was renewable at the end of the year. In this contract petitioner was referred to as "Manager" and the Sonotone Corporation as "Manufacturer". The Sonotone Corporation will hereinafter be referred to as the Manufacturer. *272 A resume of the statements and provisions in the agreement is as follows: The Manufacturer was engaged in manufacturing and selling portable hearing aids and supplies, repair parts, and similar products. The Manager was designated as one qualified to carry on a retail distribution of the products of the Manufacturer. The Manager was granted the exclusive retail sales right for the Manufacturer's products and supplies in certain named counties in Kansas and Missouri. The Manager was to maintain at his own expense suitable sales offices and demonstration rooms for the sale of the Manufacturer's products. The Manufacturer authorized the Manager to employ two salesmen, who would sell Manufacturer's products exclusively. The Manager was responsible to the Manufacturer for the acts of his employees and he was to bear the expense of their employment and was to indemnify the Manufacturer for any loss resulting from their acts. The Manufacturer agreed to deliver on consignment to the Manager Sonotone hearing aids to enable the Manager to conduct his business properly. The title to this stock remained in the Manufacturer until sold. The Manager was to sell the Manufacturer's products, but *273 the price, credit terms and sales policies were established by the Manufacturer. The Manager was to make daily reports to the Manufacturer of these sales and transactions. The Manufacturer was to pay the Manager a commission on all sales; the sales of his salesmen were included in the Manager's total sales. The Manager was to pay his own expenses, including all salaries and commissions to his employees, occupational taxes, and property taxes. The personal property taxes on the stock of the Manager were to be paid by the Manufacturer. Social Security tax and other Government deductions from compensation due employees were taken from commissions paid by the Manufacturer to the Manager, and the Manufacturer was to remit such taxes to the proper authorities. The Manufacturer reserved the right to establish policies and rules that would apply to sales to customers from counties not covered by the Manager's contract. Transactions with the United States Government and other Government agencies, specifically, were not covered in this agreement. The Manager had no power or authority to incur indebtedness or liability in the name of the Manufacturer except as authorized. The Manager was *274 not to use the name "agent" or "agency" in the conduct of the business, nor was he to convey to the public generally that he had any general authority to represent the Manufacturer. At the Manufacturer's expense, the Manager was to apply for a Fidelity bond to protect the Manufacturer. The Manager carried at his own expense appropriate compensation insurance to protect himself from liability for damages for injuries to his employees. The Manager agreed not to publish or permit to be published any testimonials, photographs or statements of any person without written permission from the Manufacturer. The Manager agreed to indemnify, protect and save harmless the Manufacturer from all claims and suits by third parties arising out of or incident to the business of the Manager growing out of this contract. The Manufacturer agreed to permit the Manager to describe himself as a "sonotone Distributor". The Manager was to send to the Manufacturer personal history information, credit information, and an automobile questionnaire properly filled out for all newly employed salesmen. Termination notices were also sent to the Manufacturer. The Manufacturer was to furnish the Manager advertising *275 matter; stationery for office and sales use was furnished to Manager at cost. The Manager was to make reports to the Manufacturer at such times, daily, weekly, or monthly, as the Manufacturer prescribed. The Manager agreed not to issue or permit the use of any advertising matter, except that as furnished by the Manufacturer without the Manufacturer's written approval. The Manufacturer agreed by separate agreement to match dollar for dollar the money expended by the Manager for local advertising. The Manager was to send to the Manufacturer monthly, or at other prescribed intervals, a statement of the income and expenses of his operation. The Manufacturer reserved the right to audit the Manager's books. The Manager agreed to abide by all the Manufacturer's rules and regulations pertaining to credit sales and to assist the Manufacturer in the collection of accounts without additional compensation. The Manager agreed to disclose, convey and assign to the Manufacturer all trade marks, designs and improvements made by him in the field of the Manufacturer's operation. Both the Manager and the Manufacturer, upon condition, reserved the right to terminate their contract upon 30 days' notice. *276 As long as the Manager was to continue in the Manufacturer's employ he agreed to abide by the general policies established by the Manufacturer. The Manager also agreed not to compete with the Manufacturer for a period of five years after the termination of the agreement. This contract was governed by the laws of the State of New York, both as to interpretation and performance. On his tax returns petitioner reported his occupation as district manager. Petitioner was an employee of the Sonotone Corporation, and not an independent contractor in his relationship with the Sonotone Corporation. During 1948 and 1949 petitioner repaired and rebuilt hearing aids other than those of Sonotone; this work was done as an independent contractor. Petitioner reported on his tax returns income from these services under Schedule C (Profit (or Loss) From Business or Profession). Petitioner reported his compensation from the Sonotone Corporation under the section reserved for wages and salaries. Petitioner deducted all of his expenses, those incurred under the Sonotone agreement and those resulting from his other service business, from his service income under Schedule C. In computing his tax for each *277 year he also took the standard deduction. The amounts below in the first column (A) were disallowed by respondent as deductions from gross income, the amounts in the second column (B) were allowed as deductions from adjusted gross income: 1948
(A)
(B)
Car Expense
$ 1,029.30
$ 514.65
Advertising
1,354.87
1,354.87
Commissions to Salesmen
10,609.96
10,609.96
Supplies
625.35
625.35
Misc. Expense
188.04
Bad Debts
413.25
1949
Car Expense
$ 413.13)
$ 512.57
Car Depreciation
612.00)
Advertising
1,100.33
1,100.33
Commissions to Salesmen
10,657.21
10,657.21
Supplies
684.47
684.47
Misc. Expense
206.25
Bad Debts
397.25 The standard deduction was disallowed in both years. No objection is now made to the correction for "Miscellaneous Expense". In 1948 petitioner used the family car for business purposes, and in 1949 he purchased a second car for use in his business. In 1948, 70 per cent of the claimed car expenses ($1,029.30) was attributable to business use, and in 1949, 90 per cent of the claimed car expenses ($413.13) and 90 per cent of the claimed car depreciation ($612.00) were attributable to business use. Petitioner made *278 advances to one of his salemen in 1948. The salesman died before $413.25 of the advances were repaid. Petitioner deducted this amount as a bad debt in 1948. However, in 1951, petitioner collected this sum from the estate of the decedent. Respondent disallowed the $413.25 as a bad debt deduction in 1948. In 1949 petitioner made advances to his brother, also one of his salesmen. Part of these advances were unpaid and petitioner deducted $397.25 of these unpaid advances as a bad debt deduction; respondent also disallowed this sum. Opinion Independent contractor or employee, that is the question. Petitioner contends that he is an independent contractor and as such is not only entitled to deduct certain business expenses from gross income in determining adjusted gross income, but also is entitled to deduct the standard deduction from adjusted gross income in arriving at net income. Sections 22 (n), 23 (a) (1) and (2), I.R.C. Respondent considers petitioner an employee and as such is only entitled to deduct certain business expenses from adjusted gross income in computing net income. Section 22 (n). The determination of whether a taxpayer has a relationship of *279 an employee or independent contractor is primarily a question of fact. See Chester C. Hand, Sr., 16 T.C. 1410; nevertheless there are recognized standards or criteria which will aid us in resolving this question. An employee relationship exists where the employer retains the right to direct the manner in which the business is to be done, as well as the results to be accomplished. Singer Manufacturing Co. v. Rahn, 132 U.S. 518, 523. An "independent contractor" has been defined as one who contracts to do certain work according to his method and without being subject to the control of his employer, except as to the product or result of his work. Raymond E. Kershner, 14 T.C. 168, 173. Elements of the relationship such as control of the premises, control and supervision of the workmen, the nature and manner of the compensation are to be considered. Under the terms of the contract between petitioner and the Manufacturer it clearly appears that petitioner was an employee. Petitioner was employed to sell the Manufacturer's products; he was under the direction and control of the Manufacturer. The products were sold at prices fixed by the Manufacturer *280 and the extension of credit on sales, the advertising and matters of policy were all controlled by the Manufacturer. Petitioner's compensation was a commission based on the amount of sales in a territory established by the Manufacturer and the sales were made from stock furnished and owned by the Manufacturer. The agreement provided that the petitioner was to pay all of his own expenses, including all salaries and commissions to his employees; however, the Manufacturer established the rate of the salesmen's commission, and the Manufacturer was to remit to the proper Government authorities the Social Security taxes and other deductions from compensation due employees. We recognize that petitioner had the right to select or dismiss his employees but this without more of the indicia of an independent contractor does not make him one. Employees such as labor foremen or office manager often employ the workers under their supervision. The end result of petitioner's work was to make sales; but unlike the independent contractor he was not legally free to choose the means of doing it. Therefore, considering all the facts, we sustain respondent's determination that the itemized deductions resulting *281 from the relationship between petitioner and the Sonotone Corporation are deductions from adjusted gross income. The standard deduction was properly disallowed. The next issue involves the question whether petitioner is entitled to certain deductions. Petitioner alleged error after respondent disallowed two bad debt deductions, one of $413.25 in 1948 and another of $397.25 in 1949. Bad debts may only be deducted under section 23 (k) (1) when the debts "become worthless within the taxable year" claimed. We have no evidence proving that the debts were in fact worthless when they were claimed; respondent must be sustained, and the deduction disallowed. Next, petitioner contends that respondent erred when he disallowed half of the deduction for car expense and car depreciation. From the record we find that 70 per cent of the claimed expenses for the family car in 1948 was incurred in business use. Further, we find that 90 per cent of the claimed expenses and depreciation for the second car was attributable to business use in 1949. Our adjustments of the expenses and the depreciation for these automobiles are deductible from adjusted gross income in computing net income. In writing *282 this opinion we recognize that petitioner incurred certain other expenses which did not stem from his employment with the Manufacturer. There is no issue relating to these expenses for apparently the parties are in agreement that they were incurred in his service business as an independent contractor. Decision will be entered under Rule 50.